484 So.2d 310 (1986)
Ray FOLKLAND, Plaintiff-Appellant-Appellee,
v.
THOMSON McKINNON SECURITIES, INC. and Charles Digh, Defendants-Appellees-Appellants.
No. 84-1204.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
Felix A. Dejean, III and Thomas Dejean, Opelousas, for plaintiff-appellant-appellee.
Woodley, Barnett, Robert W. Fenet, David Levingston, Lake Charles, for defendants-appellees-appellants.
Before GUIDRY, KING and KNOLL, JJ.
GUIDRY, Judge.
This is a suit for damages for alleged breach of contract, fraud and misrepresentation in connection with defendants' handling *311 of plaintiff's funds for investment purposes.
Plaintiff, Ray Folkland, instituted this suit on July 7, 1983 against Thomson McKinnon Securities, Inc. (Thomson McKinnon) and Charles D. Digh, III, seeking to recover $65,709.00 which he alleges was deposited with defendants for investment purposes, plus damages for mental anguish. Defendants filed exceptions of prematurity and motions for a stay order, asserting that plaintiff had not complied with a contractual provision requiring that any disputes arising between the parties were to be settled by arbitration. The trial court denied the exceptions and motions. Thomson McKinnon thereafter applied to this court for a writ of certiorari, which was denied. (Docket No. 84-753, La.App. 3rd Cir.1984).
The matter was tried on its merits on September 10 and 11, 1984. On October 24, 1984, judgment was rendered in favor of plaintiff in the amount of $16,884.91, together with legal interest from the date of judicial demand until paid. Plaintiff appeals seeking an increase in the amount awarded. Thomson McKinnon and Digh suspensively appealed urging five assignments of error.
A review of the record reveals the following pertinent facts. Upon the advice of his daughter, Ray Folkland consulted with Charles Digh, a stockbroker for Thomson McKinnon, regarding the possibility of employing Digh to make investments for him. On July 15, 1980, Folkland entered into an agreement for option trading of securities with Thomson McKinnon, which specified that his money was to be invested in "covered writings", a relatively low risk security investment.
Over the next two years, Folkland deposited $65,709.38 with Thomson McKinnon for investment purposes. At the outset, Folkland's monies were invested in "covered writings", however, at a later time when the return on such investments sharply declined, Digh, without Folkland's knowledge or consent, began to invest Folkland's money in high risk securities. Although he was sent periodic statements by Thomson McKinnon, Folkland testified that he was not made aware of the status of his account until November 1982 when the Securities and Exchange Commission contacted him in the course of its investigation of Thomson McKinnon. At that time, Folkland confronted Digh as to the condition of his account, and was informed that he still had $48,000.00 in his account. In actuality, Folkland's account at Thomson McKinnon contained just over $14.00. Folkland thereafter instituted this suit.
In rendering judgment for Folkland, the trial court reasoned as follows:
"There was a total disregard of the instructions of Folkland to invest in a manner so that the principal would be safe. Speculative investments were made without the authority of the customer and without consulting with him. Despite knowing that Folkland could not interpret the statements being sent to him, he was never advised that he was gradually losing his savings. There was gross mismanagement and misrepresentation.
The total amount deposited by Ray Folkland with Thomson McKinnon was $65,709.38. Of that sum $48,824.47 was withdrawn by the plaintiff. His net loss was $16,884.91....
Plaintiff also seeks damages of $100,000.00 for mental anguish. The contract between the parties did not have for its object the gratification of some intellectual enjoyment. He is not entitled to recover damages for mental anguish. There is also a claim for attorney fees but no basis for such an award either by statute or in contract has been established.
The exception of prescription filed by Thomson McKinnon is overruled. The actions which formed the basis for this suit continued until November, 1982, when the plaintiff discovered that his account had been depleted. Further the action is based on contract rather than tort."
On appeal, Folkland argues that the trial court erred in failing to award him general *312 damages and attorney's fees, and also asserts that the award of $16,884.91 was erroneous in light of the fact that Folkland deposited over $65,000.00 with Thomson McKinnon.[1]
Defendants have suspensively appealed from the lower court's judgment urging the following assignments of error:
1. The trial court erred in finding that arbitration was not mandated and that this action was not premature;
2. The trial court erred in not finding that plaintiff assumed the risk of trading losses;
3. The trial court erred in holding that plaintiff was entitled to recovery in view of his contributory negligence;
4. The trial court erred in holding that any claim which plaintiff may have in tort had not prescribed; and,
5. The trial court erred in finding that there was mismanagement or misrepresentation by defendants in connection with the Folkland account.
Since we find defendants' first assignment of error dispositive of the case, we need only address that issue.

ARBITRATION
Defendants urge error in the trial court's denial of their exceptions of prematurity and motions to stay the proceedings for arbitration in accordance with a provision of the option trading agreement. We agree this was error.
On July 15, 1980, Folkland entered into an agreement for option trading of securities with Thomson McKinnon. Provision 8 of the agreement states as follows:
"8. Any dispute between your firm and us and any claim by your firm against us or by us against your firm arising out of the purchase, sale, endorsement, execution or other handling of puts and/or calls for our account shall be settled by arbitration before the Arbitration Committee of the New York Stock Exchange, Inc. in accordance with the rules of that Committee."
Shortly after plaintiff filed his petition in the instant suit, Thomson McKinnon filed an exception of prematurity and motion for a stay order, urging the necessity to submit plaintiff's claims to arbitration as per the above provision in the option trading agreement. Digh later filed a similar exception and motion. Following a hearing, defendants' exceptions and motions were denied. Thomson McKinnon thereafter applied to this court for supervisory writs on the issue of the trial court's denial of the motions. On August 21, 1984, defendant's writ was denied by this court, which found no error in the ruling complained of.[2] (Our docket number 84-753).
Upon commencement of trial on the merits, September 10, 1984, Thomson McKinnon reasserted its objection to the ruling of the trial court and the court of appeal regarding its motions to arbitrate.
The Louisiana Arbitration Law, La.R.S. 9:4201-4217, "reflects a legislative policy favoring arbitration as a tool for speedy resolution of contract disputes", and states that provisions for arbitration "in valid contracts shall be irrevocable". Willis-Knighton Medical Center v. Southern Builders, Inc., 392 So.2d 505 (La.App. 2d Cir.1980).
La.R.S. 9:4201 provides as follows:
"A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the *313 agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis ours).
By the very terms of the last clause in 9:4201, the statute presupposes the existence of a valid contract as a basis for invoking arbitration. In George Engine Co., Inc. v. Southern Shipbuilding Corp., 350 So.2d 881 (La.1977), the Supreme Court discussed the limitation of 9:4201 as follows:
"Aside from a natural reluctance to surrender the historical jurisdiction of courts to decide the legal issue presented by a petition to rescind a contract on account of error in its inducement, arbitrators are designated to arbitrate and resolve factual controversies arising out of valid contracts between the parties. They need not be lawyers and in all probability are wholly unqualified to decide legal issues. Indeed they are not bound to apply the law. Arbitration, moreover, deprives a party of a jury trial and the right to appeal, substantial rights which should not be denied unless voluntarily and knowingly waived. It was in all probability to preserve these rights and to limit arbitration within proper bounds that the Legislature created an exception to the enforceability of arbitration provisions in contracts where "grounds ... exist at law or in equity for the revocation of any contract." La.Rev. Stat. 9:4201."
Our jurisprudence also holds that certain matters are non-arbitrable due to specific rights given by substantive law, such as the right to dissolve a partnership of indefinite duration, or matters not subject to non-judicial determination, such as child custody rights or patent infringement claims. Stone v. Stone, 292 So.2d 686 (La. 1974).
Since the present case is not one which falls among the exceptions of non-arbitrable cases, the arbitration clause contained in the contract between Folkland and Thomson McKinnon is "valid, irrevocable, and enforceable" unless it can be found that the contract itself was void ab initio. George Engine Co., Inc., supra. See also Dean Witter Reynolds Inc. v. Byrd, ___ U.S. ___, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
Plaintiff's petition alleges misrepresentations and acts of mismanagement on the part of Digh, as agent for Thomson McKinnon. However, these allegations refer to Digh's actions in the actual handling of plaintiff's account following the inception of the contract and not in the inducement to contract. Nowhere in the petition does plaintiff assert the invalidity ab initio of his contract with Thomson McKinnon, nor does the record evidence reflect such. Plaintiff alleges in his petition that he freely deposited $65,709.00 with Thomson McKinnon "for the purpose of long-term conservative investment". The record is clear that initially Digh deposited plaintiff's funds into just such investments. It was only after the return on this type investment took a sharp decline and plaintiff's principal began declining that Digh started channeling the funds into higher risk investments. Additionally, plaintiff clearly sets forth in brief that the basis of his suit is for breach of contract. Therefore, the validity of the contract itself certainly is not at issue.
We thus find that the parties entered into an enforceable agreement which provided for arbitration before the Arbitration Committee of the New York Stock Exchange, Inc., and between them such agreement is binding.
Having found the validity of the contract entered into by plaintiff and Thomson McKinnon and the existence of an arbitration clause therein, the only remaining possible support for the trial court's denial of defendants' request for arbitration would be that defendants somehow waived their right thereto.[3] We find no *314 such waiver on the part of defendants. Quite to the contrary, defendants have diligently attempted to have the issues raised by this suit submitted to arbitration pursuant to the arbitration clause.
It is well settled that the failure of a party to arbitrate in accordance with the terms of an agreement may be raised either through a dilatory exception of prematurity demanding dismissal of the suit or by a motion to stay the proceedings pending arbitration. State, Division of Administration v. Algernon Blair, Inc., 415 So.2d 612 (La.App. 3rd Cir.1982). Defendants in the instant case utilized both of these avenues as soon as plaintiff filed the present suit. Upon having their demands rejected by the trial court, Thomson McKinnon thereupon sought relief from the Court of Appeal. Unfortunately, defendant's demands were denied by this court also. And again, as soon as the trial on the merits commenced, Thomson McKinnon reasserted its objection to the denial of arbitration. Additionally, on appeal, defendants' first assignment of error concerned the trial judge's ruling against arbitration.
Due to the strong policy in Louisiana favoring the right to demand arbitration, courts have found waiver of such right only in extreme cases. Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756 (La.1982). Not only is there a total lack of evidence tending to establish a waiver of defendants' right to demand arbitration, but there exists an abundance of evidence to illustrate that defendants did everything in their power to evoke arbitration.
La.R.S. 9:4202 provides:
"If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration."
The trial court was therefore mandated to order the parties herein to proceed to arbitration, and was without authority to do otherwise. Matthews-McCracken Rutland Corp., supra; Waterworks District No. 1 of Parish of Terrebonne v. Babin, 393 So.2d 282 (La.App. 1st Cir.1980). Since the parties herein had a valid agreement to arbitrate their disputes, the trial court in the instant case thus lacked subject matter jurisdiction to try the merits of the dispute. La.C.C.P. Art. 2002; Woodson Const. Co., Inc. v. R.L. Abshire Const. Co., Inc., 459 So.2d 566 (La.App. 3rd Cir.1984).
In the factually similar case of Campagna v. Smallwood, 428 So.2d 1343 (La.App. 4th Cir.1983), plaintiff filed suit against defendant on a construction contract. The contract contained a provision that all claims or disputes arising under the contract were to be disposed of by arbitration. Defendant thereafter filed an exception of prematurity or, alternatively, a motion to stay the proceedings pending arbitration. The trial court overruled defendant's exception and motion and proceeded to trial on the merits. Following the trial in which judgment was rendered in plaintiff's favor, defendant appealed on various issues. His initial assignment of error was based on the lower court's failure to dismiss plaintiff's suit and require arbitration.
In ruling on the arbitration issue raised by defendant, the Fourth Circuit discussed the strong policy in Louisiana in favor of arbitration and the fact that only in extreme cases have courts found a waiver of the right to demand arbitration. The court then went on to hold:
"However, during oral argument defendant's counsel acknowledged that the record is complete and stated that a remand would only cause additional delays. The purpose of arbitration is to avoid costly and lengthy litigation and for *315 speedy resolution of contractual disputes. Spencer v. Hoffman, 392 So.2d 190, 191 (La.App. 4th Cir.1980). That purpose has long since been rendered moot in this case. We agree that no purpose would be served by setting aside the judgment and remanding for arbitration."
Insofar as the holding in Campagna is based on defendant's oral waiver of its demand for arbitration, we are in agreement. However, with due respect, we disagree with the suggestion that the issue of arbitration is rendered moot because the matter has been tried on its merits.
We recognize that one of the principal goals of arbitration agreements is for the speedy disposition of differences through informal procedures without resort to court action. Firmin v. Garber, 353 So.2d 975 (La.1977); Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974); Standard Company of New Orleans, Inc. v. Elliott Const. Co., Inc., 363 So.2d 671 (La.1978). However, this is not the sole purpose of arbitration. Arbitration is also favored due to the knowledge, experience and expertise of the arbitrators which enables them to decide factual questions regarding the performance of certain contractual obligations. George Engine Co., Inc., supra; Standard Company of New Orleans, Inc., supra. Although our decision seems to thwart one of the avowed purposes of arbitration, i.e., the avoidance of costly and lengthly litigation, to decide otherwise would unfairly deny defendants their contractual right to arbitration because of error on the part of this court and the trial court. From the very institution of this lawsuit, defendants persistently and correctly urged their right to have the matter arbitrated pursuant to the provisions of the option trading agreement entered into between the parties. Considering the validity of the underlying agreement and the arbitration clause set forth therein, the trial court was without jurisdiction in this matter. Woodson Const. Co., Inc. v. R.L. Abshire Const. Co., Inc., supra. See also Dean Witter Reynolds, Inc. v. Byrd, supra.
Accordingly, for the reasons above set forth, the judgment of the trial court in favor of Ray Folkland against Thomson McKinnon Securities, Inc., and Charles D. Digh, III, is reversed and set aside. This matter is remanded to the trial court with instructions to stay further proceedings until arbitration has been had in accordance with the terms of the agreement. All costs at the trial level and on appeal are assessed to plaintiff, Ray Folkland.
REVERSED AND REMANDED.
NOTES
[1] During the life of the investment contract, Folkland received monthly draws from Thomson McKinnon to cover his living expenses. The total amount deposited with Thomson McKinnon was $65,709.38. Of that sum, $48,824.47 was withdrawn by Folkland. Thus, the trial court fixed Folkland's net loss at the sum of $16,884.91.
[2] The record before us does not contain a copy of the trial court's ruling on the motions at issue nor a transcript from the hearing on the motions. We thus are not apprised of the specific reasons for the trial court's denial of said motions.
[3] For a discussion of the authority of this court to review the issue of whether a party has waived his rights to arbitration, see I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590 (La.App. 3rd Cir.1981).