519 So.2d 799 (1987)
Dina CIACCIO, Wife of/and Jacob Ciaccio, Individually and in their Capacity as the Natural Parents of the Minor Children, Vincent Ciaccio, and an unnamed Minor Child, Deceased,
v.
Dr. Francis T. CAZAYOUX; Dr. Walter A. Scheuermann; Dr. Albert I. Tydings; St. Tammany Parish Hospital Service District No. 1; Charity Hospital of Louisiana in New Orleans; Dr. Jeanne Eddington; and Dr. Kim Hardy.
No. 86 CA 1491.
Court of Appeal of Louisiana, First Circuit.
December 22, 1987.
Rehearing Denied February 24, 1988.
Peter Garcia, Covington, for plaintiffs.
*800 H. Martin Henley, Jr., New Orleans, for defendants.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is an appeal from a trial court's judgment sustaining defendants' dilatory exception pleading the objection of prematurity and dismissing plaintiffs' suit.

Facts
On October 19, 1983, Mrs. Dina Ciaccio retained Drs. Francis T. Cazayoux, Walter A. Scheuermann, and Albert I. Tydings as obstetricians for treatment during her pregnancy. On that same day, Dina Ciaccio was presented with a document entitled "Arbitration Agreement," which provided that the patient agreed to submit to arbitration any controversy between the patient and the named physicians arising out of claims based on negligence or medical malpractice. Plaintiff read and signed the arbitration agreement.
On January 15, 1984, Dina Ciaccio was admitted to St. Tammany Parish Hospital because of premature labor; her anticipated due date was April, 1984. On that same day, Dr. Cazayoux examined her and administered Yutopar, a drug designed to delay labor. On the following day, Dina Ciaccio was transferred to Charity Hospital of Louisiana in New Orleans because of her inability to pay for the St. Tammany Hospital stay. On January 16, 1984, Dina Ciaccio gave birth to twins. The first child, Vincent, was born alive and lived for twenty-one days. The second child died moments after birth. Neither child was able to survive due to premature birth.
Dina Ciaccio and her husband, Jacob Ciaccio, filed wrongful death and survival actions individually and as natural parents of the deceased minor children. Named as defendants were Drs. Cazayoux, Scheuermann, and Tydings; St. Tammany Parish Hospital Service District No. 1; Charity Hospital of Louisiana in New Orleans; and Drs. Jeanne Eddington and Kim Hardy. In their petition, the Ciaccios alleged that all defendants were solidarily liable for the death of their children.
On February 18, 1986, Drs. Cazayoux, Scheuermann and Tydings filed a dilatory exception raising the objection of prematurity. Defendants alleged that there was in effect a valid and enforceable arbitration agreement, whereby the Ciaccios agreed to submit to arbitration any claim based on negligence or medical malpractice. On July 18, 1986, the trial judge sustained defendants' exception and dismissed the Ciaccios' suit. On July 30, 1986, the Ciaccios filed a motion for new trial, which was subsequently denied. Thereafter, the Ciaccios filed the instant appeal raising the following issues:[1]
1. There was no valid, binding arbitration agreement at the time plaintiffs' petition was filed;
2. The exception should not have been maintained and the suit should not have been dismissed as (plaintiff) Jacob Ciaccio, either individually or in his capacity as the natural parent of the deceased minor children, could not be bound by the arbitration agreement, as (plaintiff) Dina Ciaccio did not have the capacity or authority to bind Jacob Ciaccio.

Causes of Action Set Forth in Petition
LSA-C.C. art. 2315 provides:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
Historically, LSA-C.C. art. 2315 granted the designated beneficiaries two separate and distinct causes of action, totally unrelated to each other. First, beneficiaries *801 are given the right to recover the damages which the victim suffered and would have been entitled to recover from the tort feasor, if the victim had lived. This is commonly referred to as the "survival action" which, by the express terms of the Article, survives the death of the injured party and passes to the beneficiaries as an inheritable property right. In addition, the named beneficiaries are granted the right, if the victim dies as a result of the tort, to recover from the tortfeasor such damages as the beneficiaries have suffered as a result of the victim's wrongful death. This is ordinarily denominated as the "wrongful death action." Guidry v. Theriot, 377 So.2d 319 (La.1979).
By Acts 1986, No. 211, § 2, the Legislature enacted two provisions, LSA-C.C. arts. 2315.3 and 2315.4, which specifically set forth the provisions of law regarding the survival action and the wrongful death action previously covered in LSA-C.C. art. 2315. The provisions thus enacted were redesignated as LSA-C.C. arts. 2315.1 and 2315.2 on the authority of LSA-R.S. 24:253.
LSA-C.C. art. 2315.1, which addresses the survival action, provides:
A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
B. In addition, the right to recover medical expenses and funeral expenses only may be urged by the decedent's succession representative in the absence of any class of beneficiary set out in the preceding Paragraph.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
D. As used in this Article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectively.
LSA-C.C. art. 2315.2, which addresses the wrongful death action, provides:
A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving.
B. The right of action granted by this Article prescribes one year from the death of the deceased.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
D. As used in this Article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectively.
In the instant case, Dina and Jacob Ciaccio instituted the negligence action against defendants individually and as the natural parents of the two infants who died as a result of defendants' alleged negligence. A review of the allegations of their petition reveals that the Ciaccios' petition sets forth the following causes of action:
1) Dina Ciaccio's wrongful death action for the loss of her children;
2) Jacob Ciaccio's wrongful death action for the loss of his children;

*802 3) Vincent Ciaccio's survival action; and,
4) the unnamed minor child's survival action.

Validity of the Arbitration Agreement
The Louisiana Arbitration Law, LSA-R. S. 9:4201-4217, reflects a legislative policy favoring arbitration as a tool for speedy resolution of contract disputes. Folkland v. Thomson McKinnon Securities, Inc., 484 So.2d 310 (La.App. 3rd Cir.1986); Willis-Knighton Medical Center v. Southern Builders, Incorporated, 392 So.2d 505 (La. App. 2nd Cir.1980). By Acts 1975, No. 371, § 1, the Legislature expanded this policy to specifically include medical and dental contracts by adding a new chapter, designated as Chapter 2 and comprising LSA-R.S. 9:4230-4236. These new sections provide for arbitration of disputes arising out of or connected with medical or dental contracts.
LSA-R.S. 9:4231 provides, in pertinent part, that:
The decisions to enter into a medical or dental contract shall be voluntary on the part of the patient, and on the part of the medical or dental practitioner. If both parties voluntarily agree to enter such a contract, the following but not necessary or exclusive provisions of such contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
LSA-R.S. 9:4232 provides that:
A provision in any medical contract between a patient and medical institution, under which the parties agree to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or a provision to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract, and except as herein provided.
Further, LSA-R.S. 9:4235 sets forth the notice requirement of the right to revoke an arbitration agreement and the procedure whereby a patient may revoke such arbitration agreement as follows:
Prior to obtaining a patient's signature on an arbitration agreement, the medical or dental practitioner or medical institution shall inform the patient in writing that:
1) the patient has the right to void the agreement within thirty days of execution thereof, and that
2) if an act or acts of negligence and/or medical malpractice is committed prior to the revocation date the arbitration agreement shall be binding with respect to said act or acts, and that
3) notification of revocation of the said arbitration agreement must be in writing and mailed by certified mail, return receipt requested.
Generally, courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit, and lead to no absurd consequences. LSA-C.C. arts. 2045, 2046; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that it was not explained, or that he did not understand it. Carter's Insurance Agency, Inc. v. Franklin, 428 So.2d 808 (La.App. 1st Cir.1983), On Rehearing.
In the instant case, on October 19, 1983, Dina Ciaccio entered into an arbitration agreement with defendants.[2] The provisions of the instant agreement closely *803 tracked the language in the sample contract in LSA-R.S. 9:4231 and the requisite written notification to the patient of revocation rights was clearly printed on the reverse side of the contract.
At the hearing on the exceptions, defendants introduced into evidence a signed copy of the arbitration agreement. Dina Ciaccio testified that upon her initial appointment with defendants, she read and signed the arbitration agreement. Dina Ciaccio testified that she understood the physicians would not accept her as a patient if she did not sign the document.
Although Dina Ciaccio was a high school graduate and confirmed that she had no trouble reading and understanding what she read, the trial court engaged her in the following colloquy to determine what she understood:
THE COURT:
Let me ask this question. At the time you read it, when you first went into the doctor's office, what did you think it meant?
THE WITNESS:
I thought it meant that you could not sue them.
THE COURT:
You thought it meant you could not sue them.
THE WITNESS:

*804 Right.
THE COURT:
And you were agreeing, at that time, not to sue them?
THE WITNESS:
Right, which I thought was kind of strange, to have to sign something like that, but I had heard that they were very good doctors and I didn't question it. I just signed it.
Dina Ciaccio further testified that at no time did she communicate a desire to revoke the arbitration agreement. Although Dina Ciaccio urges that she was unaware of her right to revoke the agreement, the arbitration agreement clearly reflects the patient's right to revoke and procedure for revoking the agreement as required by LSA-R.S. 9:4235.
After thoroughly reviewing the arbitration agreement and the evidence adduced at the hearing on the exception, we find, as did the trial judge, the existence of a valid and binding arbitration agreement binding Dina Ciaccio.
However, on the face of the arbitration agreement, Jacob Ciaccio's claim for the wrongful death of his children and the children's survival actions were not submitted to arbitration.
Generally, ordinary contract principles govern the question of who is bound by an arbitration agreement, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit. United Steelworkers of America v. Warrior And Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Andrew Martin Marine Corp. v. Stork-Werkspoor Diesel B. V., 480 F.Supp. 1270 (E.D.La.1979), cert. denied, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (May 24, 1982).
Jacob Ciaccio did not sign the arbitration agreement, nor did anyone sign the agreement on his behalf. Further, Dina Ciaccio did not sign the agreement as a representative of the two minor children. Therefore, we find that the two minor children and Jacob Ciaccio did not agree to submit to arbitration any dispute arising out of the medical treatment received from defendants.

Dilatory Exception Pleading the Objection of Prematurity
Defendants contend that the Ciaccios are not entitled to judicial relief because, by entering into the arbitration agreement, they submitted to arbitration any claim they may have as a result of the medical treatment received from defendants.
The defense of prematurity may be raised by the dilatory exception pleading the objection of prematurity. LSA-C.C.P. art. 926(1). The function of the exception is to permit raising the issue that the judicial cause of action has not come into existence because some prerequisite condition has not been fulfilled. Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719 (La.1976). See also State, Division of Administration v. Algernon Blair, Inc., 415 So.2d 612 (La.App. 3rd Cir.1982). When the issue is raised by the exception pleading the objection of prematurity, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate, by reason of which the judicial action is premature. Cook v. AAA Worldwide Travel Agency, 360 So.2d 839 (La.1978); Steeg v. Lawyers' Title Insurance Corporation, supra.
In the instant case, the trial judge properly sustained defendants' dilatory exception pleading the objection of prematurity with regard to Dina Ciaccio's claim for the wrongful death of her children. By entering into the October 19, 1983, arbitration agreement, Dina Ciaccio agreed to submit to arbitration her claims for damages against defendants arising out of negligence or medical malpractice. Clearly, defendants established the existence of a valid arbitration agreement binding Dina Ciaccio to submit to arbitration any claims arising out of the medical treatment received from defendants. As such, Dina Ciaccio's suit for the damages she sustained as a result of the wrongful death of her children is premature. Such claim must first be submitted to arbitration in accordance with the express terms of the arbitration agreement. The trial judge properly sustained defendants' dilatory exception pleading the objection of prematurity with regard to Dina Ciaccio's wrongful death claim.
*805 However, with regard to Jacob Ciaccio's wrongful death action and the survival actions of Vincent Ciaccio and the unnamed Ciaccio child, the trial judge erred in sustaining defendants' exception pleading the objection of prematurity. Jacob Ciaccio and the minor children had no contract with defendants requiring arbitration of disputes arising between them. See I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590 (La.App. 3rd Cir.1981). Clearly, the trial judge erred in sustaining defendants' dilatory exception pleading the objection of prematurity as to Jacob Ciaccio's wrongful death action and the minor children's survival actions.

Conclusion
For the above reasons, the judgment of the trial court sustaining defendants' dilatory exception pleading the objection of prematurity and dismissing Dina Ciaccio's wrongful death claim as to Drs. Cazayoux, Scheuermann, and Tydings is affirmed. In all other respects, the judgment of the trial court is reversed. The wrongful death action of Jacob Ciaccio and the survival actions of the two minor children are remanded to the trial court for further proceedings. Costs of this appeal are assessed against defendants and Dina Ciaccio.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Although we will not address each assignment of error individually, the opinion adequately addresses all issues raised.
[2] The arbitration agreement provided as follows:

On the reverse side of the agreement was the following notice:
NOTICE TO PATIENT
Prior to obtaining a patient's signature on an arbitration agreement, the medical or dental practitioner or medical institution shall inform the patient in writing that:
1) The patient has the right to void the agreement within thirty days of execution thereof, and that
2) If an act or acts of negligence and/or medical malpractice is committed prior to the revocation date the arbitration agreement shall be binding with respect to said act or acts, and that
3) Notification of revocation of the said arbitration agreement must be in writing and mailed by certified mail, return receipt requested.