569 So.2d 158 (1990)
Dr. Jerzy S. KOSMALA
v.
James PAUL and The Baton Rouge Symphony Association.
No. 89 CW 1878.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
Writ Denied January 11, 1991.
Mark E. Falcon, Baton Rouge, for plaintiff Dr. Jerzy S. Kosmala.
Gordon A. Pugh, Baton Rouge, for defendant James Paul and The Baton Rouge Symphony Ass'n.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Plaintiff, Dr. Jerzy S. Kosmala, instituted this action against defendants James Paul and the Baton Rouge Symphony Association (BRSA), alleging that he was wrongfully terminated from his employment with BRSA as its principal violist. Defendants filed a declinatory exception of lack of subject matter jurisdiction and a dilatory exception of prematurity, alleging that under the plaintiff's employment contract the instant claim required arbitration. The trial court overruled defendants' exceptions. Defendants applied to this court for supervisory writs which were denied on January 5, 1990. Subsequently, application for supervisory writs was made to the Louisiana Supreme Court. The Supreme Court granted the writ and issued an order on March 22, 1990, ordering a remand of the case to this court for briefing, argument and an opinion. 558 So.2d 577.
On remand, we affirm the trial court and remand for further proceedings.

*159 FACTS
Dr. Kosmala alleges that since 1981 he has entered into successive one-year contracts with the BRSA, which contracts are governed by the provisions of a Master Musicians Contract (MMC).[1] Dr. Kosmala contends that BRSA violated the terms of the MMC when it failed to notify him in writing, before May 1, 1988, that he would not be re-engaged as a musician for the 1988-89 contract year. Accordingly, Dr. Kosmala filed the instant suit.
In response the defendants filed an exception of lack of subject matter jurisdiction and a dilatory exception raising the objection of prematurity. The trial court dismissed both exceptions. In their application for supervisory writs, the defendants contend that the district court did not have subject matter jurisdiction over the suit because the MMC provided for final and binding arbitration over the matter, and that according to the Louisiana Arbitration Law, LSA-R.S. 9:4201, et seq.,[2] the trial court is mandated to stay all further proceedings so that arbitration can be had in accordance with the MMC.
The provisions of the MMC pertinent to the instant case read as follows:
ARTICLE XDISMISSALS
(1) The Association may dismiss a musician, after warning him and the Local in writing, including but not limited to the following causes: repeated, willful, and unexcused absence from or tardiness *160 at concerts or rehearsals; insubordination; intoxication affecting behavior or performance at a concert or rehearsal; persistent inattention to or neglect of duties, and any behavior which is disruptive or detrimental to rehearsal or performance. A musician may appeal his dismissal by submitting in writing his case to the Dismissals Committee.... Failure to re-engage a musician who has been under contract to the Association for less than four (4) years is not to be considered a dismissal under this clause. Decisions of the Dismissals Committee will be final and binding.
(2) No musician may be dismissed by the Music Director for reasons of musical incompetence without prior written warning to the musician and the Local that the musician's performance is below acceptable standards. Any musician so dismissed will have the right to appeal in writing within fourteen days to the Skills Review Committee.... Failure to re-engage a musician who has been under contract to the Association for less than four (4) years is not to be considered a dismissal under this clause. Decisions of the Skills Review Committee will be final and binding.
ARTICLE XICONTRACT NEGOTIATIONS, CONTRACTS AND INTERPRETATION OF CONTRACTS
. . . . .
(3) All complaints, disputes or grievances which involve questions of interpretation or application of any clause of this Agreement will be negotiated among the Association, the Local and the Orchestra Committee.
ARTICLE XIIRE-ENGAGEMENT
(1) Notice of Re-engagement: The Association agrees to notify, in writing prior to May 1 of each year, any musician who has been under contract with the Association for more than four (4) full years, if it intends to re-engage the musician for the following season. In turn, a musician who has been under contract to the Association for more than four (4) full years agrees to notify the Association in writing by May 31 if the musician does not intend to accept the contract.
. . . . .
(2) Re-Engagement Protection: The Association shall not fail to re-engage a musician who has been under contract to the Association for more than four (4) full years, unless it first gives notice of that intention in writing by the applicable dates and that notice must specify whether the failure to re-engage is for reason of some act or action which would fall within the review procedures of the Dismissals Committee as set forth in Article X(1) of this contract or is for reasons of musical incompetence which would fall within the review procedures of the Skills Review Committee as set forth in Article X(2) of this contract. If such a failure to re-engage should occur, the musician shall be entitled to the review procedure set forth in the applicable sub-paragraph of Article X of this contract. The Association's failure to re-engage a musician who has been under contract to the Symphony for less than four (4) full, consecutive years immediately prior to the initial year of this contract, will not, by reason of that failure to re-engage, be entitled to the review procedures set forth in Articles X and XII of this contract.
A musician who has been on authorized leave of absence from the Orchestra during any of the four years prior to the first year of this contract and who, for that reason, is unable to satisfy the requirement of four (4) full consecutive years immediately prior to the first year of this contract, shall, nevertheless, be entitled to the notice and review protections of Articles X and XII so long as the musician has had four (4) full years under contract at some time during the six (6) years immediately prior to the first year of this contract.
ARTICLE XIVSEASONAL CONTRACTS
(1) Each musician will be engaged season-to-season under the terms of this *161 Master Agreement by the execution of a season contract giving the exact dates of employment for the subsequent season.
(2) If there is a conflict of language between the individual seasonal contract and this Master Agreement, the Master Agreement will be binding on the interpretation of this language.
. . . . .
(4) The individual contracts between the Association and the musicians will become and constitute a part of this Agreement, and this Agreement will be and constitute a part of each individual contract.
Plaintiff contends that the procedures set forth in the MMC, which are urged by the defendants herein as "binding arbitration," do not apply to the facts of the instant case because he was not dismissed for any of the reasons set forth in Article X, nor was his failure to be re-engaged for any of the reasons set forth in Article X. Plaintiff reasons that Article X provides for the dismissal or firing of a musician during the term of his contract only for certain enumerated causes and for musical incompetence; "such a dismissal" may be appealed to a Dismissals or Skills Review Committee. Plaintiff argues that Article XII, pertaining to failure to re-engage, is the only pertinent contract provision. He further alleges that BRSA failed to re-engage him for the 1988-89 season based solely upon his failure to indicate his interest in returning to perform with the BRSA, in writing, before May 31, 1988. He contends that this reason for failure to re-engage him does not fall within the reasons for dismissal enumerated in Article X and, therefore, he is not required to submit his dispute to arbitration.
The plaintiff further contends that the review procedure of the Dismissals Committee is not binding arbitration in the true meaning of the term because the members of the committee are not impartial third persons,[3] nor does the contract provide for a hearing at which both parties have an opportunity to be heard.[4] Finally, the plaintiff contends that in order for an arbitration agreement to be found, the agreement must be clear from the plain language of the contract; otherwise, an arbitration agreement should not be implied.
The Louisiana Arbitration Law, LSA-R.S. 9:4201-4217,[5] provides for valid, irrevocable, and enforceable arbitration agreements, LSA-R.S. 9:4201. A stay of judicial proceedings under LSA-R.S. 9:4202, or an order directing arbitration under LSA-R.S. 9:4203, requires the court to determine three threshold issues: (1) that an arbitration agreement was made, (2) that the opponent failed or refused to comply with it, and (3) that the party requesting it is not in default in proceeding with the arbitration. See Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974).
The issue of whether there exists a valid arbitration agreement between the plaintiff and the BRSA is the crux of this case. Arbitration is defined as "[t]he reference of a dispute to an impartial (third) person chosen by the parties to the dispute who agree in advance to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard." Black's Law Dictionary, fifth edition, p. 96.
BRSA contends that this court should construe the alleged arbitration clauses broadly, and that any ambiguity in the clauses should be interpreted in favor of arbitration. However, a review of the jurisprudence[6] *162 cited by BRSA in support of this view reveals that the arbitration clauses involved in those cases are distinguishable from the alleged arbitration clauses in the MMC in that the arbitration clauses were quite explicit in stating that all disputes will be settled by arbitration and the clauses provide a method for so doing. The so-called arbitration clauses in the MMC are not explicit. Notwithstanding the strong presumption in favor of arbitration, the arbitration clause which is sought to be enforced must have a "reasonably clear and ascertainable meaning" in order to enforce arbitration. See Woodson Const. Co. v. R.L. Abshire Const., 459 So.2d 566 (La.App.3d Cir.1984).
Contracts which are legally entered into have the effect of law on those who have formed them, and the courts are bound to give legal effect to such agreements according to the true intent of the parties. LSA-C.C. art. 1983.
Because the instant dispute involves BRSA's failure to re-engage the plaintiff, the pertinent contract provision is Article XII, which provides that BRSA shall not fail to re-engage a musician who has been under contract to the Association for more than four years, unless it first gives notice of that intention in writing by the applicable dates; that notice must specify whether the failure to re-engage is for reason of some act or action which would fall within the review procedures of the Dismissals Committee as set forth in Article X(1) of the contract, or is for reasons of musicial incompetence which would fall within the review procedures of the Skills Review Committee as set forth in Article X(2) of the contract.
BRSA contends that the plaintiff's dismissal falls within the review process of the Dismissals Committee even though the reason given by BRSA for failure to re-engage the plaintiff does not fall within the enumerated reasons set forth in Article X. BRSA points out that the list is illustrative and therefore encompasses BRSA's failure to re-engage the plaintiff for failure to notify BRSA of his intent to return.
While it is true that a review process by the Dismissals Committee is available for failure to re-engage tenured musicians, this review process is apparently available only when the failure to re-engage is specified as being because of some act which would fall within the review procedures of either the Dismissals or Skills Review Committees. BRSA did not comply with the mandate of Article XII by specifying that its decision not to re-engage plaintiff was for the reason of some act which would fall within the review procedures of the Dismissals or Skills Review Committees as set forth in Article X(1).[7] Without this specification the plaintiff is left to speculate as to whether he qualifies for appeal to a review committee. Furthermore, the plaintiff contends that even if the review process applies, it is his option and not the option of the BRSA to invoke this process.
It is clear from a reading of the MMC that reasonable persons would find the contract subject to more than one interpretation regarding the arbitration of the instant dispute. As such, the alleged arbitration clauses in the MMC do not have a reasonably clear and ascertainable meaning and therefore do not provide for arbitration as contemplated in LSA-R.S. 9:4201. The party seeking to enforce arbitration provisions has the burden of showing the existence of a valid contract to arbitrate. See Ciaccio v. Cazayoux, 519 So.2d 799 (La. App. 1st Cir.1987). Under the facts of the present case, BRSA has failed to establish that an arbitration agreement existed.[8]
*163 For the above reasons, we affirm the ruling of the trial court and remand for further proceedings. Costs of this writ are to be paid by defendants.
AFFIRMED AND REMANDED.
EDWARDS, J., concurs.
NOTES
[1] Although Dr. Kosmala is not a party to the MMC, the one-year contracts which are signed by musicians, such as the one entered into with Dr. Kosmala, adopt the MMC by reference, stating: "Terms of the Master Musicians Agreement are binding on both parties of this contract." A copy of the MMC was introduced into evidence at the hearing on the exceptions, without objection. Additionally, by stipulation, a contract exemplary of the former one-year contracts executed by Dr. Kosmala and the BRSA was introduced into evidence.
[2] LSA-R.S. 9:4201, 9:4202 and 9:4203 read as follows:

9:4201 Validity of arbitration agreements
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9:4202 Stay of proceedings brought in violation of arbitration agreement
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
9:4203 Remedy in case of default; petition and notice; hearing and proceedings
The party aggrieved by the alleged failure or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties, or of the property, for an order directing that the arbitration proceed in the manner provided for in the agreement. Five days' written notice of the application shall be served upon the party in default. Service shall be made in the manner provided by law for the service of a summons.
The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure or refusal to perform is an issue, the court shall proceed summarily to the trial thereof.
If no jury trial is demanded, the court shall hear and determine the issue. Where such an issue is raised, either party may, on or before the return day of the notice of application, demand a jury trial of the issue, and upon such demand the court shall issue an order referring the issue or issues to a jury called and empanelled in the manner provided by law.
If the jury finds that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury finds that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall issue an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.
[3] Article X provides that the "Dismissals Committee... will consist of the Chairman of the Personnel Committee of the Board of Directors, the President of the Board, or his designee, the General Manager, the Musical Director, the Chairman of the Musicians' Orchestra Committee and two at-large representatives of the orchestra selected by majority vote of the musicians."
[4] Article X only provides for submission of the aggrieved person's case to the committee in writing.
[5] See Footnote 2, infra.
[6] Woodson Construction, supra; American Dairy Queen Corp. v. Tantillo, 536 F.Supp. 718 (M.D. La.1982); and Mar-Len of Louisiana, Inc. v. Parsons-Gilbane, 773 F.2d 633 (5th Cir.1985.) See also Folkland v. Thomson McKinnon Sec., Inc., 484 So.2d 310 (La.App.3d Cir.1986); Ciaccio v. Cazayoux, 519 So.2d 799 (La.App. 1st Cir.1987).
[7] BRSA also fails to explain why it did not comply with the express requirements of Article XII, which requires it to notify plaintiff before May 1, 1988, of its failure to re-engage him.
[8] Defendants also cite Article XI(3) in support of their contention that all matters must be submitted to arbitration. We find no merit in this contention because the article only provides for negotiations without stipulating that the decision will be final and binding.