**Saul LEVINE and Marion Levine, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and Jesse Scott, Defendants.**

**No. 85 Civ. 8354 (WCC).**

United States District Court, S.D. New York.

July 22, 1986.

Alexander A. Koblen, New York City, for plaintiffs.

Bressler, Director & Rothenberg, New York City, for defendants; David J. Olesker, Brian F. Amery, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiffs Saul and Marion Levine ("the Levines") brought this action against Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch"), a securities brokerage house, and Jesse Scott ("Scott"), a Merrill Lynch account representative, alleging that defendants fraudulently induced them to trade in options and churned their account, resulting in a net loss of approximately $147,000. Plaintiffs allege that defendants thereby: (1) violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the '34 Act"), 15 U.S.C. §§ 78j(b), 78t(a) (1982), and Securities and Exchange Commission rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), promulgated under section 10(b); (2) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982); and (3) committed common law fraud and

breached their fiduciary duties to plaintiffs. Subject matter jurisdiction is predicated upon section 27 of the '34 Act, 15 U.S.C. § 78aa (1982), section 1964 of RICO, 18 U.S.C. § 1964 (1982), and the doctrine of pendent jurisdiction.

This matter is now before the Court on defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, to stay this action and compel arbitration. For the reasons set forth below, defendants' motion is granted in part and denied in part as indicated below.

*Background*

On a motion to dismiss, the Court must accept as true the facts alleged in the complaint. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972) (per curiam); *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). Accordingly, for the purposes of this motion, the relevant facts are as follows:

In 1982, plaintiff Saul Levine was a 70–year-old retired professor of art history, and plaintiff Marion Levine, his wife, was a 64–year–old associate professor of English at Nassau Community College. Saul Levine received $460 per month as a pension; his wife earned $31,000 per year teaching.

On March 12, 1982, the Levines opened a so-called "discretionary account" at Merrill Lynch, over which Scott, their broker, exercised complete control. Scott was aware of the Levines' age, employment, and income situation. He also knew that they were unsophisticated and inexperienced in financial matters, and sought to invest only in stable, income-producing securities.

In October 1982, Scott allegedly induced the Levines to enter into an agreement authorizing Scott to trade in options on their behalf. According to the Levines, Scott told them "that options are a safe form of investment which are suitable for generating conservative growth and income consistent with [their] needs." The Levines did not understand the nature of options or the risks that options trading entailed, and had not previously invested in options. Scott also allegedly represented that he was an expert in the securities investment field and, more specifically, in the field of options, and that the Levines should rely on his expertise and knowledge and should give him complete control over the handling of their account, which they did.

In the approximately 260 trading days between October 5, 1982 and October 25, 1983, Scott initiated some 98 transactions for the Levines' account. Scott generated $20,228 in commissions and $4,790 in margin charges. An additional option purchase on January 27, 1984 resulted in another $596 in commissions. These transactions resulted in a net loss of $147,849 and wiped out most of the Levines' life savings.

The Levines allege that Scott knew that they were unable to bear the risks of heavy trading on margin in high-risk options but disregarded their investment needs and objectives, and initiated excessive trades for, or "churned," their account by purchasing and selling speculative options in order to generate commissions. The Levines assert that the transactions were excessive in size and frequency in light of their financial objectives and resources.

Plaintiffs' complaint asserts three claims against defendants. Plaintiffs' first claim charges defendants with violations of section 10(b) and rule 10b–5. Plaintiffs' second claim charges defendants with violating RICO, and alleges as predicate acts violations of the mail fraud statute, the wire fraud statute, and the federal securities laws. Finally, plaintiffs' third claim charges defendants with common law fraud and breach of fiduciary duty. As noted above, defendants have moved to dismiss the complaint against them for failure to state a claim. In the alternative, defendants argue that plaintiffs' claims must be stayed pending arbitration.

*Discussion*

A. *The Securities Fraud Count*

Defendants would have the Court construe the securities count as being based solely on alleged violations of NYSE and

NASD rules because it "contains no allegations that the alleged 'churning' underlying [plaintiffs'] claims was conduct proscribed by § 10(b) or Rule 10b–5." Defendants argue that the securities count must therefore be dismissed, since no private right of action exists for violations of those rules.

■ Although the Court agrees that no private right of action exists for violations of NYSE and NASD rules, *see, e.g., Frota v. Prudential-Bache Sec., Inc.*, 639 F.Supp. 1186 at 1190 (S.D.N.Y.1986); *Klock v. Lehman Bros. Kuhn Loeb, Inc.*, 584 F.Supp. 210, 217–18 (S.D.N.Y.1984); *Colman v. D.H. Blair & Co.*, 521 F.Supp. 646 (S.D.N.Y. 1981); *see also Carrott v. Shearson Hayden Stone, Inc.*, 724 F.2d 821, 823 (9th Cir. 1984) (per curiam); *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1419 (11th Cir.1983), defendants' construction of the securities count strains credulity. Plaintiffs have clearly alleged a securities violation based on churning.

■ In order to state a churning claim under the antifraud provisions of the federal securities laws, a plaintiff must allege the following three elements: (1) that the trading in his account was excessive in light of his investment objectives; (2) that the broker exercised control over the account; and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. *Frota v. Prudential-Bache Sec., Inc.*, 639 F.Supp. 1186 at 1190–91 (S.D.N.Y. July 16, 1986); *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd mem.*, 788 F.2d 3 (2d Cir.1986); *Rush v. Oppenheimer & Co., Inc.*, 592 F.Supp. 1108, 1112 (S.D.N.Y), *vacated in part on other grounds on reh'g*, 596 F.Supp. 1529 (S.D. N.Y.1984). Plaintiffs have adequately alleged each of these elements. Plaintiffs have alleged what their investment goals and objectives were, and that those goals and objectives were known to Scott. Complaint ¶¶ 7–8. They have alleged that Scott excessively traded, or churned, their account between October 5, 1982 and January 27, 1984 by purchasing speculative options. *Id.* ¶ 13. They have attached a schedule detailing the

excessive activity in their account. *Id.* exh. 1. They have alleged that Scott exercised complete control over their account and that they never initiated or suggested the purchase or sale of any security traded for their account. *Id.* ¶ 15. Finally, they have alleged that Scott disregarded their financial and investment needs and sought only to maximize his commissions. *Id.* ¶¶ 10, 13.

It is true that plaintiffs never expressly state in their complaint that the alleged churning "was conduct proscribed by § 10(b) or Rule 10b–5." However, I am sure that Merrill Lynch's attorneys do not need plaintiffs' attorney to tell them that churning is a violation of section 10(b) and rule 10b–5. And, even if they do, it is certainly apparent from the complaint that plaintiffs allege that defendants violated section 10(b) and rule 10b–5. Subject matter jurisdiction over count I, the securities count, is predicated on section 27 of the '34 Act, 15 U.S.C. § 78aa (1982). Count I is entitled "Securities Fraud." Plaintiffs' "wherefore" clause for count I requests a declaration "that the defendants ... have violated the 1934 Act." Finally, paragraph 24 of the complaint, although a part of count II, the RICO count, specifically states that the conduct alleged in paragraphs 6 through 19, the securities count, constitutes a violation of sections 10(b) and 20 of the '34 Act. Thus, plaintiffs have adequately alleged a claim under section 10(b) and rule 10b–5 based on a churning theory.

■ Plaintiffs have also adequately alleged a securities fraud claim based on a misrepresentation theory. To state a claim under section 10(b) and rule 10b–5 on a misrepresentation theory, plaintiffs must allege: (1) that defendants misrepresented or omitted to state material facts in connection with the purchase or sale of a security, (2) that plaintiffs relied to their detriment upon defendants' misrepresentations or omissions, and (3) that defendants made their misrepresentations or omissions with "scienter," that is, with an intent to deceive, manipulate, or defraud plaintiffs. *Rush v. Oppenheimer & Co., Inc.*, 592

F.Supp. 1108, 1111 (S.D.N.Y.), *vacated in part on other grounds on reh'g*, 596 F.Supp. 1529 (S.D.N.Y.1984); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1231 (S.D.N.Y.1981); *Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807, 810 (S.D.N.Y.1978). Plaintiffs have adequately alleged each of these elements.

Plaintiffs have alleged several misrepresentations by Scott, including, for example, that options are a safe form of investment suitable for generating conservative growth and income consistent with plaintiffs' needs, Complaint ¶ 8, and that Scott was an expert in the securities investment field, and more specifically, in the field of options, *id.* ¶ 9. They have also alleged omissions by Scott, including that he intended to disregard plaintiffs' needs and best interests in order to sell them securities which were not suitable for them, but which would generate commissions larger than those on bonds or stocks. *Id.* ¶ 10.

These misrepresentations and omissions were "in connection with the purchase or sale of a security" because they allegedly induced plaintiffs to open option and margin accounts. A discretionary stock option account, where the investment is made by one person and complete discretion over the management of the account is in the hands of someone else, is an "investment contract" and therefore a security. *See Jenny v. Shearson, Hammill & Co.*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,911, at 90,633 (S.D.N.Y. Mar. 20, 1981); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1235–39 (S.D.N.Y.1981); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1146–47 (S.D.N.Y.1979). Thus, the opening of the option and margin accounts in October 1982 was the purchase of a security. Plaintiffs have also alleged the requisite elements of reliance and scienter. Complaint ¶¶ 10–12.

In sum, I have concluded that plaintiffs' first count states a claim for securities fraud on both churning and misrepresentation/omission theories. Defendants' motion to dismiss count I is denied.

**B. *The RICO Count***

The second of plaintiffs' three counts is a claim under RICO. Plaintiffs allege as predicate acts violations of the federal securities laws and the mail and wire fraud statutes. Defendants argue that plaintiffs' RICO claim must be dismissed because: (1) Merrill Lynch cannot be both a RICO defendant and the RICO "enterprise," and (2) plaintiffs have not adequately alleged a "pattern" of racketeering activity.

■ The Court agrees that the RICO count must be dismissed *as against Merrill Lynch.* All but one of the courts of appeals that have considered the issue, including the Second Circuit, have held that a defendant may not be simultaneously the "enterprise" and a "person" who conducts the affairs of the enterprise through a pattern of racketeering activity. *See, e.g., Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 634 (3d Cir.1984); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir.1984), *aff'd on other grounds,* — U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1933); *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir.1982), *aff'd in pertinent part en banc*, 710 F.2d 1361, *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). *But see United States v. Hartley*, 678 F.2d 961, 987–90 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

■ Even if this were not the case, the RICO claim against Merrill Lynch would have to be dismissed because there is no allegation that Merrill Lynch played any part in the alleged misdeeds. Plaintiffs allege merely that Merrill Lynch failed to supervise Scott and recklessly disregarded his wrongdoing. Complaint ¶¶ 17–19. However, in order to charge Merrill Lynch with a RICO violation, plaintiffs would

have to plead facts that would give rise to *criminal* liability on its part for Scott's acts. Section 1961 defines acts to be racketeering only if they are among the enumerated felonies punishable under the laws of the United States. *See Moss v. Morgan Stanley Inc.*, 553 F.Supp. 1347, 1362 (S.D. N.Y.) (Pollack, J.), *aff'd*, 719 F.2d 5 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Plaintiffs cannot argue that Merrill Lynch is criminally liable for Scott's acts by reason of section 20 of the '34 Act. In order for a controlling person to be held criminally liable under that section, it must be shown that the controlling person knowingly used the controlled person to commit the illegal act. *Id.; see also Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188, 1196 & n. 4 (S.D.N.Y.1985).

■ Defendants next contend that the RICO claim must be dismissed in its entirety because plaintiffs have not adequately alleged a "pattern of racketeering activity." Plaintiffs' allegations of mail fraud and wire fraud, Complaint ¶¶ 22–23, are clearly deficient. They merely track the language of the mail and wire fraud statutes. Nowhere in the complaint do plaintiffs allege the specifics of any use of the mails or wires. These allegations are therefore insufficient to satisfy rule 9(b), Fed.R.Civ.P. Plaintiffs may replead the mail fraud and wire fraud allegations within twenty days from the date of this Opinion and Order.

■ While plaintiffs' allegations of mail and wire fraud are deficient, I conclude that plaintiffs' allegations of securities fraud are adequate to allege a RICO "pattern." Section 1961(5) defines a "pattern of racketeering activity" as at least two "acts of racketeering activity" within a ten-year period. Fraud in the sale of securities is such an act. 18 U.S.C. § 1961(1)(D). Plaintiffs have alleged two instances of securities fraud—first, that Scott fraudulently induced them to open a discretionary options trading account by misrepresenting the risk in options trading, and second, that Scott churned their account. These are not two isolated acts of racketeering activity, nor do they consist of one criminal act

divided up into component parts in order to satisfy the quantitative demands of the RICO statute. Plaintiffs would be complaining that they were fraudulently induced to open the options trading account even if Scott had not churned their account. These predicate acts satisfy both the "continuity" and "relationship" factors which the Supreme Court recently hinted were relevant to the definition of a pattern. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, —— U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

### C. *The Motion to Stay and to Compel Arbitration*

Defendants' alternative motion to stay this action and to compel arbitration must be denied with respect to all but plaintiffs' pendent state law claims. In *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 98–99 (2d Cir.1986), decided after defendants prepared their motion papers, our court of appeals reaffirmed that in this circuit neither '34 Act claims nor RICO claims are arbitrable. However, under the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), plaintiffs' pendent state law claims must be sent to arbitration if they are covered by an enforceable arbitration clause, even if that will result in bifurcated proceedings.

■ I conclude that plaintiffs' pendent claims are governed by an enforceable arbitration clause. When plaintiffs opened their options trading account at Merrill Lynch in October 1982, they executed a customer's agreement which contained the following arbitration provision:

> *Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only* before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed.

Exhibit 1 to the Affidavit of Jesse Scott ¶ 9 (emphasis added). Under section 2 of the

Federal Arbitration Act, 9 U.S.C. § 2 (1982), this agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." Plaintiffs have offered no evidence that the arbitration provision itself was induced by fraud or that it is otherwise legally unenforceable.

In determining the scope of the parties' agreement, the Court is to bear in mind the strong federal policy favoring arbitration. The Arbitration Act establishes that as a matter of federal law, all doubts with respect to this issue are to be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. ——, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.*

In view of these principles, I have little doubt that the parties' agreement encompasses plaintiffs' pendent state law claims. The arbitration agreement expressly provides that "[a]ny controversy" arising out of plaintiffs' account or customer agreement will be settled by arbitration. It is difficult to imagine language broader than that. The Supreme Court has made it plain that if parties wish to exclude certain types of claims from an arbitration agreement, they must do so expressly and clearly. *Id.* at 3355. The parties here have made no such exceptions to their agreement, and accordingly, I conclude that the parties' agreement covers plaintiffs' pendent state law claims. Defendants' motion to stay this action and compel arbitration is granted only as to plaintiffs' pendent state law claims; in all other respects it is denied.

*Conclusion*

For the foregoing reasons, I conclude that count I of plaintiffs' complaint states a claim for violation of the anti-fraud provisions of the federal securities laws on both churning and misrepresentation/omission theories, but not for "unsuitable" trading in violation of NYSE or NASD rules. I also conclude that count II of plaintiffs' complaint states a claim for violation of RICO based on predicate acts of securities fraud, but not based on predicate acts of mail or wire fraud. Plaintiffs may replead the mail and wire fraud allegations within twenty days from the date of this Opinion and Order. Finally, defendants' motion to stay this action and compel arbitration is denied except as to plaintiffs' state law claims. The parties are directed to proceed with discovery, and to appear for a pretrial conference on Friday, October 17, 1986, at 10:00 A.M. in Courtroom 618.

SO ORDERED.