561 So.2d 952 (1990)
J. Charles COLLINS, Jr. and Fred A. Collins
v.
MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC. and John Doe.
No. 89-CA-0915.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1990.
*953 Middlebert, Riddle & Gianna, Paul J. Mirabile, Brian P. Charboneau, New Orleans, for plaintiffs/appellants/respondents, J. Charles Collins, Jr. and Freda Collins.
Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, W.L. West, New Orleans, for defendants/appellees Merrill Lynch, Pierce, Fenner and Smith Inc. and John Doe.
Before GARRISON, BARRY and KLEES, JJ.
KLEES, Judge.
The central issue involved in this appeal is whether the defendants, Merrill Lynch, Pierce, Fenner and Smith, Inc. [Merrill Lynch] and its employee, financial consultant R. Jackson Little, have the right to force the plaintiffs, former customers of Merrill Lynch, to submit their claims against defendants to arbitration.
Plaintiffs, J. Charles Collins, Jr., and Freda Collins, as heirs and successors of their brother Frank Collins, filed suit against defendants in September, 1988 alleging that defendants had made an unauthorized tender of certain debentures in the account of Frank Collins. Defendants separately filed exceptions of prematurity and no cause of action, seeking to have the controversy submited to arbitration as required by the arbitration clause in the "Customer Agreement" signed by Frank Collins. The trial judge, after ordering that the matter be submitted on depositions, overruled the exceptions in separate judgments and refused to stay or dismiss the proceedings. These rulings were appealed devolutively to this court under Code of Civil Procedure Article 2083, allowing appeals of interlocutory judgments which effect irreparable harm. As an alternative to the appeal, defendants asked that the matter be considered as an application for supervisory writs.
In our order dated June 23, 1989, we dismissed the appeal on the ground that an appeal did not lie from the overruling of such exceptions, and we also denied the application for supervisory writs. On October 6, 1989, the Louisiana Supreme Court, without opinion, reversed both rulings and remanded the case to this court for briefing, argument, and opinion. Collins v. Merrill Lynch, Pierce, Fenner and Smith, 548 So.2d 1258 (La.1989).
Accordingly, having considered the merits of the case, we find that the trial judge erred in overruling the exceptions of prematurity and no cause of action, and that defendants are entitled to arbitration. We therefore reverse the judgment of the trial court and order all proceedings in that court stayed pending arbitration of plaintiffs' claims against both defendants.
The facts of this case are as follows. In April 1982, Charles Collins opened a securities account at Merrill Lynch on behalf of his older brother Frank because Frank was in failing health and had been keeping his securities at his house. In connection with this account, Frank Collins executed a *954 "Cash Management Account Agreement" on April 23, 1982 and a "Customer Agreement," which contained an arbitration clause, on April 28, 1982. Frank Collins also granted full power of attorney over this account to his brother, Charles Collins, who handled all transactions in the account. R. Jackson Little was at all pertinent times the broker on the account.
Shortly after the account was opened in 1982, 3,249 shares of Guaranty Bank and Trust were deposited in it. In 1984, when Guaranty Bank and Trust merged with Jefferson Bank and Trust, these shares were withdrawn and exchanged for cash and debentures of the new bank, Jefferson Guaranty Bank. Two classes of Jefferson Guaranty Bank debentures, Class A (secured) and Class B (unsecured), were deposited into the account in February 1984. These debentures remained in the account until December 1987, when Merrill Lynch tendered both sets of debentures to Jefferson Guaranty Bank for cash. Merrill Lynch, through Little, had accepted the offer of Jefferson Guaranty Bank to purchase the Class A debentures for 100% of their face value plus accrued interest, and the Class B debentures for $25 per $100 of their face value.
Several months later, Jefferson Guaranty Bank called in all the remaining debentures for redemption in May of 1988 at 100% of face value plus accrued interest. In this lawsuit, Charles Collins and Freda Collins, as successors of their brother Frank, who died November 5, 1987, claim that Merrill Lynch had no authority to tender the Class B debentures, and therefore seek the difference between the amount actually received for them and the larger amount which could have been obtained had they been held until May 1988.
The only evidence considered by the trial judge in denying the exceptions were the depositions of Mr. Little and of Charles Collins, and various documentary evidence submitted by the parties. Based on this evidence, the trial judge concluded that the arbitration clause did not apply because the debentures in question were not in a Cash Management Account, but were in a cash account. Reviewing the same evidence, we find the trial judge's conclusion to be manifestly erroneous.
The Cash Management Account Agreement signed when the account was opened, as well as the monthly statements of the account and the testimony of Mr. Little, show unequivocably that Frank Collins had only one account at Merrill Lynch, which bore account number XXX-XXXXX. Each monthly statement referred to the account as a "Cash Management Account" (or "CMA"), which was essentially composed of three parts: securities, cash, and a check/card account. At all pertinent times, the debentures in question were listed on the monthly statements as securities in the CMA account. These debentures were not marginable. Mr. Little testified that a CMA account can contain non-marginable, as well as marginable, securities.
Plaintiffs contend that the account was not a CMA, but was a "cash" account, also known as a "Delaware" account. Mr. Little stated that the primary purpose of a Delaware account is to hold securities for safekeeping, which Mr. Collins cited as his purpose in opening this account. The only documentary evidence supporting plaintiffs' theory is the "New Account Form," an internal document of Merrill Lynch, which has the type of account checked as "cash" rather than "CMA". Mr. Little stated that the checking of this box was an obvious clerical error. The trial judge cited this form in his Reasons for Judgment as the primary basis of his ruling; however, in the face of the CMA agreement signed by Frank Collins and over five years worth of monthly statements clearly terming the account a CMA, we do not find the New Account Form to be determinative of the issue. Moreover, Charles Collins in his deposition repeatedly referred to the account as a "cash management account"; he stated that although he did not intend for the securities to be traded, he opened a cash management account and placed the stock in it on the recommendation of Mr. Little. Therefore, although Mr. Collins may have been confused as to the purpose *955 of the account, he clearly knew it was a cash management account.
A final piece of evidence seemingly ignored by the trial judge is the "Customer Agreement" signed by Frank Collins when he opened the account. The agreement does not specify the type of account opened, but states "In consideration of your accepting and carrying one or more accounts for the undersigned, the undersigned hereby agrees that ..." Thus, on its face the agreement would apply to all Merrill Lynch accounts owned by a particular customer, not just CMA accounts. Although Mr. Little testified that "[t]his is the customer agreement that is always signed when we open a securities account, cash management account, for a client," he was not asked and did not state whether the customer agreement was also signed when the account opened was not a CMA, but another type account.
Paragraph 11 of the Customer Agreement, entitled "Agreement to Arbitrate Controversies," reads, in pertinent part:
It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Security Dealers, Inc....
The Customer Agreement also specifically provides that its terms shall enure to the benefit of the successors and assigns of the undersigned.
Viewing the evidence as a whole, we find that the defendants are entitled to arbitration of this dispute. The preponderance of the evidence clearly shows that the debentures in question were held in a Merrill Lynch cash management account; moreover, the Customer Agreement on its face applies to all accounts of a customer, whether CMA's or otherwise, and clearly requires arbitration of all disputes arising out of the customer's business with Merrill Lynch. This agreement was uncontradicted by any of the deposition testimony.
La. R.S. 9:4201 provides:
§ 4201. Validity of arbitration agreements
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La. R.S. 9:4202 provides for a stay of proceedings pending arbitration. When the issue of arbitration has been raised by an exception of prematurity, as here, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate. Cook v. AAA Worldwide Travel Agency, 360 So.2d 839 (La. 1978). Once the court has found that the issue involved in the suit is subject to arbitration under such an agreement, La. R.S. 9:4202 mandates that the court grant a stay of the proceedings and order arbitration. Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756 (La.1982).
As there exists a valid agreement to arbitrate in the instant case, the trial court should have stayed the proceedings pending arbitration. We find no merit in plaintiffs' argument that they are not bound by the arbitration clause because the Customer Agreement was not signed by them, but by their brother Frank Collins. By its own terms, the agreement applies to the successors and assigns of the customer. Moreover, we have held that a written agreement to arbitrate does not necessarily have to be signed by both parties to be enforceable. Hurley v. Fox, 520 So.2d 467 (La. App. 4th Cir.1988).
We are also not impressed by plaintiffs' contention that Mr. Little, as broker, is not bound by the arbitration agreement between the customer and his employer, *956 Merrill Lynch. Merrill Lynch can act only through its employees. Therefore, when a dispute involves the actions of a broker, acting within the course and scope of his employment, the dispute logically must be subject to the arbitration agreement covering the broker's employer. In Folkland v. Thomson McKinnon Securities, Inc., 484 So.2d 310 (La.App. 3d Cir.1986), the Third Circuit considered the validity of an arbitration provision in a customer account agreement when the customer sued a brokerage firm and the individual broker alleging misrepresentation and acts of mismanagement on the part of the broker as agent for the firm. The court ultimately found the arbitration agreement to be enforceable against both the broker and the brokerage firm, although the case did not turn on this particular issue. In the instant case, we also hold that the arbitration clause applies to the actions of Mr. Little of which plaintiffs complain in their petition, as well as to Merrill Lynch.
Accordingly, for the reasons given, we reverse the judgment of the district court overruling the exceptions pleaded by defendants R. Jackson Little and Merrill Lynch, Pierce, Fenner and Smith, Inc. We further order that this dispute be submitted to arbitration in accordance with paragraph 11 of the Customer Agreement, and that the district court stay all proceedings in this action pending arbitration.
REVERSED.