# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01218-SCT

*SMITH BARNEY, INC. AND MARTY SCUDDER*

*v.*

*GERTRUDE HENRY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/1998 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES M. GARNER |
| | MARTHA Y. CURTIS |
| | WILLIAM LEE GUICE, III |
| ATTORNEYS FOR APPELLEE: | JOE SAM OWEN |
| | ROBERT P. MYERS, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 01/11/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/1/2001 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Smith Barney, Inc. and Marty Scudder appeal an interlocutory order of the Harrison County Circuit Court denying a motion to compel arbitration and stay proceedings.

## STATEMENT OF THE CASE

¶2. LaFare Hilliard opened two securities accounts through Mr. Marty Scudder with Smith Barney, Inc. The first account, opened in 1989, was an individual securities account, and the second account, opened in 1990, was an individual retirement account for Ms. Hilliard's benefit. Scudder served as Hilliard's financial consultant during the time she maintained her accounts at Smith Barney.

¶3. Hilliard executed client agreements in which she agreed that all controversies arising out of or relating to her accounts would be resolved by arbitration and that the client agreements would be binding on her heirs and successors. Specifically, the client agreements contained the following language concerning arbitration:

### 1989 CLIENT AGREEMENT

23. ARBITRATION AND GOVERNING LAW . . . . Any controversy arising out of or relating to any of my accounts . . . , to transactions with you, or to this agreement, . . . or relating to transactions or accounts maintained by me with any of your predecessor firms by merger, acquisition or other

business combination from the inception of such accounts, shall be settled by arbitration . . . . Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

## 1990 CLIENT AGREEMENT

23. ARBITRATION AND BINDING LAW . . . . Any controversy (1) arising out of or relating to any of my accounts maintained individually . . . ; or (2) relating to my transaction or accounts with any of your predecessor firms be merger, acquisition or other business combination from the inception of such accounts; or (3) with respect to transactions of any kind executed by, through or with you . . . ; or (4) with respect to this agreement . . . shall be resolved by arbitration . . . Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Both client agreements contained the following language regarding the binding effect of the agreements on Hilliard's heirs and successors:

25. Binding Effect. This agreement and its terms shall be binding upon my heirs, executors, successors, administrators, assigns, committee and conservators ("successors"). In the event of my death, . . . you may liquidate my account as described in Paragraph 15 above without prior notice to or demand upon my successors. . . .

¶4. Hilliard died testate on January 26, 1997. Her will established a testamentary trust containing the Smith Barney accounts. Hilliard's mother, Gertrude Henry, was named beneficiary of the trust. Her niece, Patti Ann Cospelich, was named executrix of the will and was also named as trustee and remainderman beneficiary of the trust. The chancery court ordered Cospelich to transfer all assets from the Smith Barney accounts, comprising approximately $458,012.78, to the trust. Thus, all Smith Barney accounts were closed by Cospelich.

¶5. The trust account was established for Henry's benefit, but Cospelich deposited only $17,000.00, or about four percent, of the total assets in the Smith Barney accounts. Cospelich then transferred $50,000.00 from the individual Smith Barney account into the Hilliard estate account and used these funds to pay debts of the estate. The result of this transaction was to benefit Cospelich personally to the ultimate detriment of the estate. Scudder and Cospelich closed the IRA custodian account and placed the bulk of the assets in a new IRA account for the benefit of Cospelich. Cospelich was later removed from the office of trustee.

¶6. Henry sued Smith Barney and Scudder alleging that Cospelich breached certain fiduciary duties by converting money from the Smith Barney accounts; that Scudder and Smith Barney were negligent in allowing Cospelich to convert the funds from Hilliard's accounts; and that Scudder and Smith Barney conspired with Cospelich to deprive Henry of her inheritance. Smith Barney and Scudder filed a motion to compel arbitration and stay proceedings which was denied by the circuit court. We granted this permissive interlocutory appeal pursuant to M.R.A.P. 5.

## **DISCUSSION**

### I. WHETHER THE FEDERAL ARBITRATION ACT APPLIES TO THE CLIENT AGREEMENTS.

¶7. Henry argues that she was not a party to the client agreements and, therefore, is not bound by them.

The appellants argue that Henry is bound by the arbitration agreements under the Federal Arbitration Act which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1976).

¶8. This Court discussed the Federal Arbitration Act in *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So.2d 96 (Miss. 1998). We overturned prior case law and "expressly stated that this Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." *Id.* at 104. We reiterated our policy that "[a]rticles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Id.* at 106. This Court explained:

> 'In enacting § 2 of the Arbitration Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Congress has thus mandated the enforcement of arbitration agreements.' *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The Arbitration Act, resting on Congress's authority under the Commerce Clause, creates a body of federal substantive law that is applicable in both state and federal courts. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). 'The sine qua non of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce.' *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813 n. 4 (4th Cir. 1989).
>
> Doubts as to the availability of arbitration must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). '[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.' *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979) (citing *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and *Seaboard Coast Line R.R. Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir.1977) (per curiam)).

726 So.2d at 107. In *IP Timberlands,* we held that the timber industry, on a national level, meets the minimum threshold of affecting or bearing upon interstate commerce and thus is subject the Act.

¶9. The United States Supreme Court explained that section 2 embodied "a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable upon such grounds as exist at law or in equity for the revocation of any contract. We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitation under

state law." *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). "In addition to establishing a strong presumption in favor of arbitration, the Act also limits the role of the court to determining whether an issue is arbitrable. The court's sole function is to determine whether the claim is referable to arbitration. Once that determination is made, the court may not delve further into the dispute. The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.'" *IP Timberlands*, 726 So.2d at 108 (quoting *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985).

¶10. In *Perry*, the United States Supreme Court held that the FAA pre-empted a provision of the California Labor Law which stated that wage collection actions may be maintained without regard to the existence of any private agreement to arbitrate. 482 U.S. at 489, 107 S.Ct. at 2525. The Court explained that the FAA embodied "Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. Its general applicability reflects that 'the preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered. . . .'" *Id.* at 490 (quoting *Byrd*, 470 U.S. at 221, 105 S.Ct. at 1242)

¶11. In the case sub judice, we easily recognize that the securities industry, on a national level, meets the minimum threshold of affecting or bearing upon interstate commerce, and thus initiates the Federal Arbitration Act. *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (same); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (contracts involving securities industry involve commerce and are subject to FAA); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (same). The case law in Mississippi regarding arbitration and the Federal Arbitration Act are consistent with one another. As discussed in *IP Timberlands*, "Mississippi has long observed a policy of favoring agreements to arbitrate, and this Court hesitates to disturb an agreement that knowledgeable and experienced parties freely enter into." *IP Timberlands*, 726 So.2d at 107. This contract was voluntarily entered into by Hilliard and directly involves a transaction in interstate commerce. Therefore, it is precisely the type of contract that Congress intended to be covered by the FAA. These facts, coupled with the liberal national policy in favor of arbitration, render this arbitration agreement enforceable under the FAA and our long-standing and recent precedent.

### II. WHETHER THE PLAINTIFF'S CLAIMS ARE SUBJECT TO THE ARBITRATION PROVISIONS IN THE CLIENT AGREEMENTS.

#### A. Whether the Plaintiff's Claims Arise Out of or Relates to Hilliard's Accounts or Transactions with Smith Barney or Scudder.

¶12. Henry asserts that her claims do not depend upon the formation of the agreements between Smith Barney and Hilliard nor upon Smith Barney's management of these accounts pursuant to its duties to Hilliard under the agreements. Rather, she argues that her basis in the claim goes to the assets of the Hilliard estate and Smith Barney's fiduciary duties to the estate, notwithstanding the fact that such assets were earlier the corpus of Hilliard's personal individual and IRA accounts during her lifetime. The appellants argue that this controversy falls within the broad language of the arbitration agreements.

¶13. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 18

L.Ed.2d 1270 (1967), the United States Supreme Court labeled the nearly identical language, "any controversy or claim arising out of or related to this agreement," a "broad arbitration clause" that covered both the execution and acceleration of an agreement. Similar broadly worded arbitration provisions in securities agreements with brokerage houses have been held by courts to compel arbitration. *See, e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3rd Cir. 1993) (noting that "courts have broadly construed similar agreement"); *Trott v. Paciolla*, 748 F. Supp. 305 (E.D. Pa. 1990) ( a similar arbitration agreement contained "broad sweeping terms [that] clearly encompass claims related to the [customer at issue]"); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F. Supp. 1391 (S.D.N.Y. 1986) (enforcing a similar agreement, finding that "it is difficult to imagine language broader" than the phrase "any controversy").

¶14. All of the funds which are the subject of Henry's claims were derived directly from Hilliard's accounts and transactions with Smith Barney. Thus, Henry's claims would certainly be encompassed by the broad phrase "[a]ny controversy arising out of or relating to" those accounts as indicated in the arbitration clauses of the Client Agreements. Furthermore, the alleged removal and closure of the funds at issue by Scudder and Cospelich constitute "transactions" with Smith Barney which also trigger the arbitration agreements. Clearly Henry's claims arise out of or relate to Hilliard's accounts or transactions with Smith Barney and Scudder and, therefore, are subject to the arbitration agreements.

### B. Whether the Arbitration Agreements Survive Ms. Hilliard's Death and the Alleged Termination of the Client Agreements.

¶15. Henry argues that she is not bound by the arbitration agreements because the obligation to arbitrate terminated with the closing of the Smith Barney accounts. She also argues that Hilliard did not intend for the agreements to survive her death. The appellants argue that the arbitration agreements survived Hilliard's death and the alleged termination of the Smith Barney accounts.

¶16. The death of a party to an agreement to arbitrate future disputes does not invalidate the agreement. If the agreement, on its face, evidences a clear intent that such disputes should be arbitrated, the court is bound to uphold the intent of the parties. *See In re Scott*, 193 N.Y.S. 403 (N.Y. App. Div.), *aff'd mem.*, 138 N.E. 438 (N.Y. 1922).

¶17. Henry's claims arise out of Hilliard's accounts. The termination of these accounts does not also terminate the arbitration agreement. Rather, Henry's claims arising out of the termination of the Smith Barney accounts constitute a "transaction" with Smith Barney, thereby triggering the arbitration agreements. We find that the arbitration agreements were not revoked by the death of Hilliard nor by the closure of the Smith Barney accounts, and are, therefore, enforceable against Henry.

### C. Whether Ms. Henry, as Ms. Hilliard's Heir and/or Successor, is Bound by the Arbitration Agreements.

¶18. Henry argues that she is a non-signatory, unintended, third-party beneficiary of the agreements and therefore not bound by the arbitration clauses. The agreements plainly state that they are binding on Hilliard's "heirs, successors and administrators . . . ."

¶19. Other states have interpreted nearly identical agreements in favor of arbitration. In *Collins v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 561 So.2d 952, 956 (La. Ct. App. 1990), the Louisiana Court

of Appeals held that the heirs and successors of a deceased customer of a brokerage firm were bound by the arbitration agreement signed by the customer and the firm. The court stated:

> We find no merit in plaintiff's argument that they are not bound by the arbitration clause because the Customer Agreement was not signed by them, but by their brother. . . . By its own terms, the agreement applies to the successors and assigns of the customer. Moreover, we have held that a written agreement to arbitrate does not necessarily have to be signed by both parties.

*Collins*, 561 So.2d at 955. Also, in *Herbert v. Superior Court*, 169 Cal. App. 3d 718, 215 Cal. Rptr. 477 (Cal. Ct. App.1985), the California appellate court held that a widow and her children were bound by an arbitration agreement signed by the children's father which purported to bind his "heirs." Likewise, in this case, Henry is an heir of Hilliard.

¶20. In the case at hand, we are dealing with an arbitration clause in which Henry is a successor under the terms of Hilliard's will, and as such, she is specifically covered by the agreement. According to the terms of the agreement, Henry is not required to be a signatory in order to be bound by the arbitration clause. As a successor of Hilliard, Henry is covered by the arbitration clause of the client agreements.

## CONCLUSION

¶21. We find that the agreements at issue in this case are covered by the Federal Arbitration Act as they are contracts evidencing a transaction involving national commerce. The broad arbitration provisions in the agreements and the federal policy favoring arbitration dictate we find that Henry's claims arise out of and relate to Hilliard's transactions with Smith Barney. Further, the arbitration provisions survive the death of Hilliard and the termination of the agreements and bind Henry as a successor of Hilliard. We reverse the order of the Harrison County Circuit Court denying the Motion to Compel Arbitration and Stay Proceedings, and we remand this case to that court for further proceedings consistent with this opinion.

¶22. **REVERSED AND REMANDED.**

> **PITTMAN, C.J., BANKS, P.J., SMITH AND COBB, JJ., CONCUR. WALLER, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. EASLEY, J., NOT PARTICIPATING.**

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶23. After Hilliard's death and the estate was opened, Hilliard's accounts were closed. Once the accounts of Hilliard were closed by the executrix and the new one opened, a new contract was formed. It matters not what Hilliard had previously signed prior to her death. Accordingly, I respectfully dissent.

> **I. WHETHER THE FEDERAL ARBITRATION ACT APPLIES TO THE CLIENT AGREEMENTS.**

¶24. Henry and the estate are not parties to the contract between Hilliard and Smith Barney, and therefore, it is irrelevant whether the FAA applies to client agreements in this case. Upon Hilliard's death on January 26, 1997, Cospelich was named executrix of the will and was ordered by the chancery court to close the accounts and transfer all assets from the Smith Barney accounts to the Trust. Cospelich did not comply with

the court order <u>after closing all accounts</u>. The accounts totaled approximately $458,012.78, but Cospelich refused to follow the order of the court and only deposited $17, 000.00, or about 4% of the total amount. Therefore, there are no documents for the money accounts Hilliard had with Smith Barney. Any agreement she had with them "died" with the closing of the accounts with Smith Barney. Cospelich followed the court order in that she did close these accounts, but then, without any authority, she used some of the money to pay off debts of the estate in order to increase her benefits.

¶25. The majority cites to *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96 (Miss. 1998), for the contention that arbitration clauses should be liberally construed between the parties that agree to them. *Timberlands* is distinguishable from this case in that the parties to the contract in *Timberlands* agreed to an arbitration clause. The lower court determined that instead of "arbitrators," the parties actually meant "appraisers," and this faulty ruling was reversed by this Court. This case is completely different because it is deciding the rights of a beneficiary to a trust created by a will and the testator, not the beneficiary, entered into the agreement with the other contracting party. Hilliard's clause is not applicable to a new account as a contract clause that would relate to Henry's rights. Henry's rights relate to the trust established by the estate and not to the contract with Smith Barney nor Hilliard's arbitration clause.

¶26. The majority asserts that this Court's only role is to determine whether the claims are referable to arbitration. However, state law still applies to arbitration agreements "if the law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 2527, 96 L.Ed.2d 426 (1987). *See also Volt Info. Scis., Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (FAA did not preempt California law which permits court to stay arbitration pending resolution of related litigation involving third parties not bound by arbitration agreement where parties agreed in contract to abide by state rules of arbitration). We need look no further than our own state laws governing arbitration and enforcement of contracts or simply apply general contract law to interpret arbitration clauses.

¶27. Taking the issues raised by the majority, we will address them as they were presented.

> **II. WHETHER PLAINTIFF'S CLAIMS ARE SUBJECT TO THE ARBITRATION PROVISIONS IN THE CLIENTS AGREEMENTS**.
>
> **A. It is irrelevant whether plaintiff's claims arise out of or relate to Ms. Hilliard's accounts, to transactions by Mr. Scudder or Smith Barney, or to the Client Agreements.**

¶28. The majority asserts Henry's claims arise out of or relate to Hilliard's accounts with Smith Barney, and are therefore, subject to the arbitration agreement, citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406; 87 S.Ct. 1801, 18 L.Ed. 2d 1270 (1967). Henry's claims emanate not from her status as a direct beneficiary of the agreement, but rather from her interest in the trust established by Hilliard's will. The fact that the corpus of the trust originated by virtue of the Hilliard-SBI agreements is not determinative of the arbitrability of the issues within her complaint. *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (citing *Armada Coal Exp., Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1568 (11th Cir. 1984)).

¶29. In addition, the three cases the majority cites, *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3rd Cir. 1993); *Trott v. Paciolla*, 748 F. Supp. 305 (E.D. Pa. 1990)*;* and *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F. Supp. 1391, 1397 (S.D.N.Y. 1986),

to support the claim that "broadly worded arbitration provisions in securities agreements with brokerage houses have been held by courts to compel arbitration" concern arbitration agreements that remained open and were not closed pursuant to a court order to transfer these funds to an estate. These examples do not apply to this case as the accounts here were not to remain open but were to go to the account of the estate for the creation of the trust.

¶30. While the claims asserted in Henry's complaint are related to the very funds once deposited in Hilliard's Smith Barney accounts, they should not be governed by the arbitration agreement. The agreement is to be given effect as it is written. The agreement should follow the parties, but not the funds. To rule otherwise would tie those specific funds, and whoever came into possession of them, to an arbitration agreement they never signed or contemplated. While the agreement does address assignments from Henry to a third party, the agreement is silent on transfers from that third party to another party. The funds in Hilliard's accounts were transferred to the estate and then the estate applied those funds to establish the trust. At this point the trust beneficiary steps in the shoes of an unintended third party as to the account agreements. The funds could have just as easily paid a creditor rather than establish a trust for Henry. Therefore, the agreement follows only the parties specified and not the funds themselves.

### B. The Arbitration Agreements do not survive Ms. Hilliard's death and the alleged termination of the Client Agreements.

¶31. This Court has recently decided a probate case in involving a divorce settlement, a case in which the agreement was upheld even though one of the parties to the settlement died. In *Sheppard v. Pace*, 757 So.2d 173 (Miss. 2000), the ex-wife contended that she was entitled to alimony from her deceased ex-husband's estate. The property settlement and separation agreement incorporated into their divorce specifically provided that "[T]his Agreement shall be binding upon the parties hereto, their administrators, executors and assigns." This Court held that the language was sufficient to bind the estate to the agreement to pay alimony. The Hilliard/Smith Barney agreements, however, are distinguishable from *Sheppard*. The parties in *Sheppard* anticipated what would occur upon the death of one of the parties; additionally, the life of the agreement was finite and predetermined as the life of the spouse receiving benefits. The Hilliard/Smith Barney agreement, if interpreted as under Smith Barney's analysis, could potentially have an infinite lifespan attaching itself to anyone taking funds originating from Hilliard's accounts or the trust set up by her will.

¶32. Henry contends that the arbitration clause should be treated like clauses in other contracts and expire upon the death of one of the signatories (Hilliard). The contract between Hilliard and Smith Barney did not confer rights on anyone not a party or signatory to the agreements. Furthermore, the agreements themselves did not identify any specific beneficiaries.

¶33. There was no express provision for the survival of the arbitration clauses beyond Hilliard's lifetime. The provisions of the contract between Hilliard and SBI were revoked by and at the time of Hilliard's death. Furthermore, the contract concerned only the rights of Hilliard and Smith Barney. Henry's only tie to the arbitration agreements was through her indirect relation to the Hilliard/Smith Barney agreements by virtue that she stood to benefit from the trust set up by Hilliard's will, the corpus of which consisted of the monies from Hilliard's Smith Barney accounts.

¶34. Once Hilliard died, the accounts became property of the estate and subsequently the trust. When Smith Barney's alleged negligence took place, the assets in the accounts were no longer Hilliard's personal property. Since the accounts became property of the estate, by operation of law when Hilliard died, then

the assets were ultimately property of the trust and not Hilliard; and therefore, the arbitration agreements do not apply to Henry. Henry, however, still has rights as a beneficiary, but she takes under the trust rather than as a third-party beneficiary to the account agreements.

### C. The plaintiff, as Ms. Hilliard's heir and/or successor, is not bound by the arbitration provisions in the client agreements.

¶35. Agreements to arbitrate "are essentially creatures of contract." *Tropical Cruise Lines, S.A. v. Vesta Ins. Co.*, 805 F. Supp. 409, 412 (S.D. Miss. 1992). While the United States Supreme Court has held that arbitration agreements should be enforced to the fullest extent, they are still contracts and should not be given any greater treatment or weight than any other contract. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 1806 n.12, 18 L.Ed.2d 1270 (1967)**;** *see also Southland Corp. v. Keating*, 465 U.S. 1, 19, 104 S.Ct. 852, 862 ,79 L.Ed.2d 1, 17 (1984) (Stevens, J., concurring in part and dissenting in part) (The purpose of the FAA was to make arbitration agreements "as enforceable as other contracts, but not more so.").

¶36. Henry, as a non-signatory to the contract, is not bound by the language cited by Smith Barney which defines agreement to arbitrate. *International Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1256 n.3 (S.D.N.Y. 1995) (a contract cannot bind a non-party) (citing *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir.1985) (a non-signatory to a contract was not bound by a contract where the party who signed the contract was not the non-signatory's agent), aff'd mem. 201 f.3d 431 (2d Cir. 1999); *see also Tropical Cruise Lines, S.A.,* 805 F. Supp. 805 F. Supp. at 413; *Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."); *Beacon Syracuse Assocs. v. City of Syracuse*, 560 F. Supp. 188, 201 (N.D.N.Y.1983) ("Only those who are parties to a contract may be held liable for a breach of that contract.") (citation omitted); *Dember Constr. Corp. v. Staten Island Mall*, 56 A.D.2d 768, 769, 392 N.Y.S.2d 299, 300 (N.Y. App. Div. 1977) ("Since [the defendant] was not a party to the contract, the complaint against it must be dismissed."). Additionally, the Federal Arbitration Act (FAA) does not apply to parties who are not bound by the agreement to arbitrate. Indeed, as a general rule, a third-party beneficiary is not bound by the contract even though he has a right to benefits under the contract. *Id*. In *International Customs Associates*, a federal district court held that the status of intended third-party beneficiary gives that person a right to sue but does not give others right to sue that person on the contract. *Ford Motor Co.*, 893 F. Supp. at 1256 n.3 , citing *Abraham Zion Corp.,* 761 F.2d at 103.

¶37. In the case cited by Smith Barney, *Collins v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 561 So.2d 952 (La. Ct. App. 1990), Frank Collins entered into a customer agreement with Merrill Lynch. The agreement contained a provision requiring arbitration if a dispute arose. After Frank's death, his brother and sister, as the heirs of their brother, sued Merrill Lynch claiming that Merrill Lynch had made unauthorized tender of debentures to the account. Merrill Lynch filed a motion to require arbitration as per the customer agreement. The Collinses countered that they were not bound by the agreement to arbitrate since the contract was not signed by them. "By its own terms," the court found that it applied to the heirs, stating specifically, "the agreement applies to the successors and assigns of the customer." *Id.* at 955.

¶38. The majority in its opinion is now limiting the chancery court's power to control estates when funds are involved through brokerage companies where the decedent signed an arbitration contract. Henry's claims

do not emanate from her status as a direct beneficiary of the account agreements, but rather from her interest in the trust established by Hilliard's will. Henry takes as a beneficiary of the trust and not as a direct beneficiary of the agreements between Hilliard and Smith Barney. Therefore, the arbitration clauses are not determinative of the arbitrability of the issues within Henry's complaint. See *Tracer Research Corp.*, 42 F.3d at 1295 (citing *Armada Coal Exp., Inc.,* 726 F.2d at 1568).

¶39. For the above reasons, I dissent.

    **DIAZ, J., JOINS THIS OPINION.**